# United States Court of Appeals
## For the First Circuit

No. 07-1826

UNITED STATES OF AMERICA,

Appellant,

v.

LAWRENCE NOVAK,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Boudin, Circuit Judge,
O'Connor,* Associate Justice (Ret.),
and Selya, Senior Circuit Judge.

Mark T. Quinlivan, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellant.
William J. Cintolo with whom Thomas R. Kiley and Cosgrove Eisenberg & Kiley were on brief for appellee.

June 30, 2008

---

*The Hon. Sandra Day O'Connor, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**O'CONNOR, <u>Associate Justice (Retired)</u>**. The government in this case brings an extraordinary appeal: It asks us to reverse a district court ruling barring from evidence recordings of phone calls made between an attorney and his client. These calls were recorded in clear violation of state and federal regulations. But appellee, the attorney, has not raised a Sixth Amendment challenge, and for Fourth Amendment purposes, his client consented to the monitoring of his calls. On these narrow facts, we reverse the determination of the district court that the calls must be excluded.

## I.

Scott Holyoke was a prisoner held in pretrial detention at the Barnstable County Jail in Massachusetts. Holyoke was represented by the Federal Defenders, and planned to plead guilty to charges of methamphetamine trafficking. He did not, however, wish to face sentencing with his state convictions on his record, because under the Sentencing Guidelines, the effect of those convictions on his criminal history would result in a longer prison sentence.

For assistance with these state convictions, Holyoke turned to appellee Lawrence Novak in 2005. Novak was a Massachusetts attorney. All of Holyoke's contact with Novak was conducted through telephone calls made from the County Jail, which randomly records and monitors inmate calls.

Inmates are informed of the monitoring in two ways. First, phones in the jail contain signs which state, "Calls are subject to monitoring and recording." Second, an automated message is played at the beginning of every call that is not screened, which warns the inmate that the call is subject to monitoring and recording.

Notwithstanding these warnings, Massachusetts and the Federal government have both promulgated regulations prohibiting prison officials from monitoring phone calls between inmates and their attorneys. 103 Mass. Code Regs. 482.08 (1994) (Massachusetts regulation); see also 28 C.F.R. §540.102 (prohibiting monitoring of attorney calls in federal prisons). In order to enforce those regulations, the County Jail maintains a list of attorneys. Inmates can request that officials add the phone number of their attorney to the list so as to exempt all calls made to that number from monitoring. Although Holyoke did not manually add Novak's number to the list, the list is supposed to contain all numbers in the Massachusetts Lawyers Diary and Manual. That volume included Lawrence Novak's number. See Massachusetts Lawyers Diary and Manual 1105 (2004).

In an ideal world, the calls between Novak and Holyoke would never have been monitored. This case would not be before us, were it not for two errors that occurred. The first error appears to be mechanical: Novak's number was erroneously excluded from the

list prison officials used to screen calls, and so the calls that Holyoke made to Novak were recorded.

Because the recorded calls were not monitored in real time, this error may have gone unnoticed. But the Massachusetts State Police Officer who had been assigned to be part of the team investigating Holyoke requested that the County Jail send him recordings of all calls made by Holyoke. Those recordings included calls made between Holyoke and Novak.

In the very first call that Holyoke made to Novak, Novak identified himself as an attorney. The course of the calls clarified that Holyoke was calling Novak in order to obtain his services as a lawyer. And now we come to the second error: The officer in question, upon realizing that he was listening to privileged communications between a lawyer and his client, should have immediately stopped listening to the recording.

But the officer did not do that. Instead, the officer made the troubling choice to continue to monitor the calls between Holyoke and Novak. During these calls, it became clear that Holyoke wanted to remove his prior convictions from his record not by legal means, but by having Novak file false affidavits in order to vacate his prior convictions.

Upon hearing this information, government officials approached Holyoke and asked for his cooperation in an investigation into Novak himself. Holyoke agreed to further recordings of

conversations between himself and Novak. During the course of those later conversations, Novak agreed to launder what he was told were the proceeds of drug trafficking, and to accept $60,000 of that money in payment.

Novak was arrested and indicted on one count of endeavoring to obstruct justice, in violation of 18 U.S.C. §1503, and two counts of money laundering, in violation of 18 U.S.C. §1956(a)(3)(B) and (C).

He filed a motion to suppress the recordings, claiming that Holyoke's consent to cooperate in the investigation was only obtained after the officer unlawfully listened to their first few conversations. Claiming that first instance of monitoring violated the Fourth Amendment, Novak argued that the evidence of all the calls should be suppressed as fruit of the poisonous tree.

The district court agreed with Novak, and suppressed the evidence. United States v. Novak, 453 F. Supp. 2d 249, 260 (D. Mass. 2006). The government now appeals.

II.

The question that the parties present to us today is not whether we approve of the methods that law enforcement employed in this case, or whether prisons have authority under either state law or the Sixth Amendment of the United States Constitution to regularly monitor phone calls made between attorneys and their clients. While we recognize that the facts of this case may

implicate these wider concerns, appellee Novak has limited his arguments in favor of suppression to a Fourth Amendment claim. Our holding is thus similarly circumscribed.

A telephone call can be monitored and recorded without violating the Fourth Amendment so long as one participant in the call consents to the monitoring. United States v. White, 401 U.S. 745, 752 (1971) (plurality opinion); cf. Griggs-Ryan v. Smith, 904 F.2d 112, 116 (1st Cir. 1990) (discussing consent in Title III context but equating it to consent required for Fourth Amendment purposes). Furthermore, inmates and pretrial detainees who have been exposed to the sort of warnings that Holyoke saw here have been deemed to have consented to monitoring. Cf. United States v. Footman, 215 F.3d 145, 155 (1st Cir. 2000) ("[A] prison inmate's express acceptance of having his calls recorded as a condition of using the telephone" counts as consent, notwithstanding any argument as to duress). At the beginning of every call that Holyoke made, including those to attorney Novak, he heard an automated message advising that his calls were being monitored.[1] Holyoke nonetheless spoke to Novak after having heard the warning.

There is little question, given the state of First Circuit precedent, that had Holyoke spoken to anyone other than an attorney

---

[1]Novak's office was also made aware of the monitoring through this recorded message. Because the government chose not to argue that Novak consented to monitoring of the call, we do not discuss the significance of this point.

-6-

from whom he was seeking legal advice, he would be deemed to have consented to monitoring and recording of his calls. The question we are now presented with is whether the analysis of Holyoke's consent changes because he was speaking with an attorney.

No doubt, the monitoring of Holyoke's calls to his attorney presents a significant Sixth Amendment issue. Cf. Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998) (discussing importance of attorney-client privilege); United States v. Mastroianni, 749 F.2d 900, 907 (1st Cir. 1984). Novak, however, does not raise a Sixth Amendment challenge to the introduction of these recordings; he claims, instead, that monitoring of the calls violated his Fourth Amendment rights.

The district court below relied on the fact that both state and federal governments have recognized the value of unmonitored calls between an attorney and his client, and the state of Massachusetts has barred monitoring of such calls by regulation. See Novak, 453 F. Supp.2d at 259. We agree with the district court that the calls between Novak and Holyoke should never have been recorded under the applicable Massachusetts regulation. See 103 Mass. Code Regs. 482.08 (1994). (While Novak also implies that the monitoring violated federal regulations, the federal regulation at issue applies only to treatment in federal prisons. 28 U.S.C. §500.1(c), (d).) We disagree, however, that the violation of state law implies that Holyoke lacked the necessary consent.

First, the Supreme Court has held that "when States go above the Fourth Amendment minimum, the Constitution's protections concerning search and seizure remain the same." Virginia v. Moore, 128 S. Ct. 1598, 1605 (2008). Here, there is no question that Massachusetts law was violated. That does not, however, invalidate Holyoke's consent for Fourth Amendment purposes. In the absence of the state regulations that Novak cites, we would find no Fourth Amendment bar to the monitoring of phone calls. The state regulation cannot alter Holyoke's consent.

Second, there is no evidence that Holyoke was aware of this state regulation, or that he believed his consent to monitoring of phone calls was limited only to non-attorney-client calls. We thus find no reason to believe that Holyoke's consent was vitiated by the prison officials' failure to abide by the applicable regulations.

The district court believed that the prison's failure to tell Holyoke of his right to exempt calls to his attorney from monitoring nullified Holyoke's consent. It stated that Holyoke did not consent freely to the monitoring because he believed he had no other option but to submit to recording if he wished to talk to Novak by telephone. Under such circumstances, the district court reasoned, " 'implied consent' in this sense is not a free and voluntary consent; it is instead no more than a choice between

-8-

unattractive options. . . ." <u>Novak</u>, 453 F. Supp. 2d at 259 (quoting <u>Langton</u> v. <u>Hogan</u>, 71 F.3d 930, 936 (1st Cir. 1995)).

This argument, however, proves too much. While the district court found Novak and Holyoke had a protected interest in the privacy of their conversation precisely because they were attorney and client, under Title III, consent is also required for monitoring of all prison calls. The district court's argument that Holyoke's implied consent under these circumstances was invalid is inconsistent with First Circuit precedent holding such consent to be adequate, notwithstanding the smaller number of choices that an inmate in that circumstance has. <u>Footman</u>, 215 F.3d at 155.

This Circuit has held that recordings obtained under similar circumstances between an inmate and a non-attorney did not violate the Fourth Amendment. <u>Id.</u> The inmate in <u>Footman</u> was given no choice but to accept monitoring of the calls. Notwithstanding his inability to opt out of monitoring, this Circuit held that his consent was effective.

It is no doubt significant that one of the parties to the conversation in this case is an attorney. That significance, however, does not arise out of the Fourth Amendment's prohibition against unreasonable searches and seizures. Instead, it is attached to the protections that the Sixth Amendment affords to the attorney-client relationship. Holyoke's consent, for Fourth Amendment

-9-

purposes, was adequate to support the monitoring of his calls to Novak.

Holyoke was made aware, both through posted signs and recorded messages, that his calls would be monitored and recorded. He did not ask prison officials if there was a way to communicate with his attorney without having his calls monitored, nor did he ask either his Federal Defender or Novak himself how to avoid the monitoring of calls. He did not choose alternate means to communicate with Novak, such as by letter or in person. Instead, Holyoke initiated telephone calls to Novak and discussed sensitive legal issues, despite the fact that every call he initiated started with a recording stating that the call was subject to monitoring and recording. Under these circumstances, we hold that Holyoke consented to monitoring of his calls.

III.

Because Holyoke consented to monitoring of his calls, those calls—including those made between Holyoke and his attorney—can be introduced into evidence consistently with the requirements of the Fourth Amendment.

We recognize that there are Constitutional dimensions to the monitoring that occurred we do not discuss in this opinion. The monitoring of these calls, made between an attorney and a client who is seeking legal advice, is troubling. We thus reiterate that in holding as we do, we do not express approval of the practice of

monitoring calls between attorneys and clients in prisons and jails. We have not found a Fourth Amendment problem in this particular instance. Because Novak chose not to raise the question, we do not decide whether, or to what extent, calls between attorneys and clients made from prison can be monitored consistently with the requirements of the Sixth Amendment.

REVERSED.