In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1726

CESAR GUAJARDO-PALMA,

*Plaintiff-Appellant*,

*v.*

MARTINSON (first name unknown), *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 10-cv-112-slc—**Barbara B. Crabb**, *Judge*.

SUBMITTED JULY 22, 2010—DECIDED SEPTEMBER 20, 2010

Before EASTERBROOK, *Chief Judge*, and POSNER and
HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. This appeal from the dismissal
of a suit for failure to state a claim presents the recur-
rent issue of the constitutional rights of prison inmates
regarding "legal mail," a technical term for mail relating
to legal proceedings. Fed R. App. P. 4(c); Fed. R. App. P.
25(a)(2)(C). Almost all civil proceedings by prisoners pit
the prisoner against employees of the prison, the prison

itself, or a state or federal correctional authority. It is natural for courts to be concerned about the defendants or their agents reading the prisoner's correspondence with his lawyer, if he has one. It is like a litigant's eavesdropping on conferences between his opponent and the opponent's lawyer. The plaintiff claims that his constitutional rights were violated when prison guards, outside his presence, opened legal mail addressed to him.

Suppose a letter arrives at the prison that is known to be from a prisoner's lawyer to the prisoner, and a prison guard reads it and makes a copy for his superiors in order to give them insight into their opponent's litigation strategy. *Gomez v. Vernon*, 255 F.3d 1118, 1123-24, 1133 (9th Cir. 2001). This would give the defendants a litigating advantage sufficient, the cases hold, to violate the prisoner's constitutional right to access to the courts (on which see *Christopher v. Harbury*, 536 U.S. 403, 412-13 (2002); *Lewis v. Casey*, 518 U.S. 343, 350-51, 354 (1996), and *Bounds v. Smith*, 430 U.S. 817, 828-29 (1977)). "The Fourteenth Amendment guarantees meaningful access to courts, [and] . . . the opportunity to communicate privately with an attorney is an important part of that meaningful access." *Dreher v. Sielaff*, 636 F.2d 1141, 1143 (7th Cir. 1980); see also *id*. at 1143-46; *Merriweather v. Zamora*, 569 F.3d 307, 315-17 (6th Cir. 2009); *Al-Amin v. Smith*, 511 F.3d 1317, 1325-35 (11th Cir. 2008); *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). Not that the lawyer-client privilege is constitutional. *Maness v. Myers*, 419 U.S. 449, 466 n. 15 (1975); *Lange v. Young*, 869 F.2d 1008, 1012 n. 2 (7th Cir. 1989); *Smith v. Moore*, 137 F.3d 808, 819-20 (4th Cir. 1998); *Clutchette v. Rushen*, 770

F.2d 1469, 1471 (9th Cir. 1985). But bestowing it on one side of a litigation and denying it to the other side can place the denied side at a critical disadvantage.

And so with prison officials' reading a prisoner's mail *to* his lawyer. *Jones v. Caruso*, 569 F.3d 258, 267-68 (6th Cir. 2009); *Bell-Bey v. Williams*, 87 F.3d 832, 836-40 (6th Cir. 1996); see also *Thornburgh v. Abbott*, 490 U.S. 401, 411-12 and n. 10 (1989). The attorney-client privilege is centrally concerned with confidences communicated by the client to his lawyer in order to enable the lawyer to formulate an effective litigation strategy.

A number of cases characterize the reading of mail to or from a prisoner's lawyer in a pending or impending litigation as infringing the right of free speech rather than or in addition to the right of access to the courts. The theory is that reading communications between a lawyer and his client "chills the individual's ability to engage in protected speech." *Denius v. Dunlap*, 209 F.3d 944, 954 (7th Cir. 2000); see also, e.g., *Jones v. Brown*, 461 F.3d 353, 358-60 (3d Cir. 2006); *Davis v. Goord*, 320 F.3d 346, 351-52 (2d Cir. 2003); *Brewer v. Wilkinson*, *supra*, 3 F.3d at 821, 825-26. But since the purpose of confidential communication with one's lawyer is to win a case rather than to enrich the marketplace of ideas, it seems more straightforward to base the concern with destroying that confidentiality on the right of access to the courts (or, as we're about to point out, on the due process right to a fair hearing). The Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974), left open whether "inspection of incoming mail from an attorney placed an

obstacle to access to the court," but a number of cases at our level have taken that step, as we've seen.

Not that a prisoner or anyone else has a constitutional right to a lawyer in a civil case at public expense—even a civil case, such as a habeas corpus proceeding, that challenges a criminal judgment. "Although prisoners enjoy a fundamental right of access to the courts, see *Lewis v. Casey*, 518 U.S. 343 (1996), there is no right of *subsidized* access." *Johnson v. Daley*, 339 F.3d 582, 586 (7th Cir. 2003) (emphasis in original). But if the prisoner *hires* a lawyer—or a lawyer is willing to work for the prisoner for free—the judge may not refuse to accept filings from the lawyer. "If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense." *Powell v. Alabama*, 287 U.S. 45, 69 (1932). *Powell* was a criminal case, but the decision was based on the due process clause rather than the Sixth Amendment (which had not yet been held applicable to the states), and its logic embraces civil litigation. As noted in *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1118 (5th Cir. 1980), "historically and in practice, the right to a hearing has always included the right to the aid of counsel when desired and provided by the party asserting the right."

Whereas cases like *Lewis v. Casey* involve claims on prison resources (as in challenges to the adequacy of a prison's law library), *Powell*, and also *Wolff v. McDonnell*,

*supra*; *Johnson v. Avery*, 393 U.S. 483, 484-87 (1969), and *Ex Parte Hull*, 312 U.S. 546, 547-49 (1941), involve active interference by the prison with a prisoner's unsubsidized efforts to enforce his legal rights, and provide a sturdier ground for judicial intervention. If the prisoner has counsel (or is communicating with a lawyer in the hope the lawyer will agree to represent him), the law's allowing his opponents to eavesdrop on his communications with the lawyer would undermine the prisoner's right to be represented, at a hearing, by counsel at the prisoner's expense. Cf. *Potashnick v. Port City Construction Co.*, *supra*, 609 F.2d at 1118-19. The effects of denying or impairing the right could be disastrous. Imagine a white-collar prisoner embroiled in complex bankruptcy proceedings and barred from communicating with his bankruptcy lawyer by an exceptionless rule forbidding prisoners to communicate with lawyers in civil litigation.

Parenthetically we note that while most cases brought by prisoners are civil—either prisoner civil rights cases or postconviction challenges to criminal judgments—many are criminal, since criminal defendants often are in jail during their prosecution and also during the appeal proceeding if they have been convicted. Prison officials are likely to be more interested in prisoners' suits against them than in suits relating to the prisoners' criminal judgments. A practice of prison officials reading mail between a prisoner and his lawyer in a criminal case would raise serious issues under the Sixth Amendment (and its application, by interpretation of the Fourteenth Amendment, to state criminal defendants), which guarantees a right to counsel in criminal

cases. *Altizer v. Deeds*, 191 F.3d 540, 549 n. 14 (4th Cir. 1999); *United States v. Mastroianni*, 749 F.2d 900, 905-08 (1st Cir. 1984); *United States v. Novak*, 531 F.3d 99, 100-04 (1st Cir. 2008); *Clutchette v. Rushen, supra*, 770 F.2d at 1471-72.

A different issue is presented by communications from courts and agencies to prisoners (rather than from prisoners' lawyers), or vice versa, which the plaintiff in this case, an inmate of a Wisconsin state prison, nevertheless contends are entitled to the same confidentiality as mail from a prisoner's lawyers. Most such communications are public documents, *Antonelli v. Sheahan*, 81 F.3d 1422, 1431-32 (7th Cir. 1996); *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987); *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), which the prison officials have as much right to read as the prisoner; some that are nonpublic are also routine and nonsensitive. But some are sensitive. *Sallier v. Brooks*, 343 F.3d 868, 876-77 (6th Cir. 2003). Suppose the prisoner were asking that materials that he had submitted ex parte be held *in camera* or withheld from his adversary.

No legal mail is sacrosanct, however. Prison officials cannot be certain, just from the return address on an envelope, that a letter is from a lawyer (or indeed from a court or agency) rather than from a criminal confederate of the prisoner masquerading as a lawyer, as in *Fontroy v. Beard*, 559 F.3d 173, 175 (3d Cir. 2009), and *State v. Steffes*, 659 N.W.2d 445, 448-49 (Wis. App. 2003). Occasionally the lawyer *is* a criminal confederate of the client, as in *United States v. Stewart*, 590 F.3d 93, 102-08 (2d Cir. 2009); *United States v. Merlino*, 349 F.3d 144, 149-52 (3d Cir. 2003); *United States v. Cano*, 289 F.3d 1354, 1359-60 (11th Cir.

2002); *United States v. Abbell*, 271 F.3d 1286, 1292-94 (11th Cir. 2001) (per curiam), and *United States v. Ross*, 190 F.3d 446, 448-49 (6th Cir. 1999). An accommodation is needed between the prisoner's interest in the confidentiality of communications with his lawyer (and of some communications with the court or agency in which his case is pending, whether or not he is represented by a lawyer) and the prison's interest in security. We call this a need for an "accommodation" rather than for "a balancing of competing interests" because ordinarily and in the present instance competing interests of the sort considered by courts in formulating rules of law can't be weighed; they are imponderables. The realistic goal is a *via media* in which each interest is given as much effect as possible.

So on the one hand (and postponing consideration of court and other non-attorney legal mail), prison employees, who routinely and for obvious reasons of security open prisoners' incoming mail, should be permitted to open incoming mail from a prisoner's lawyer to verify that it is indeed a communication, related to current or prospective representation, from a lawyer who is authorized to practice law in the relevant jurisdiction and is in fact the prisoner's lawyer; on the other hand the prisoner should be allowed to be present when the letter is opened. *Al-Amin v. Smith*, *supra*, 511 F.3d at 1325-26; *Jones v. Brown*, *supra*, 461 F.3d at 359; *Davis v. Goord*, *supra*, 320 F.3d at 351; *Sallier v. Brooks*, *supra*, 343 F.3d at 874; *Powells v. Minnehaha County Sheriff Dep't*, 198 F.3d 711, 712 (8th Cir. 1999) (per curiam). The approach was sketched by the Supreme Court in *Wolff v. McDonnell*,

*supra*, 418 U.S. at 576-77: "If prison officials had to check in each case whether a communication was from an attorney before opening it for inspection, a near impossible task of administration would be imposed. We think it entirely appropriate that the State require any such communications to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment. It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, *first* identify himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar. As to the ability to open the mail in the presence of inmates, this could in no way constitute censorship, since the mail would not be read. Neither could it chill such communications, since the inmate's presence insures that prison officials will not read the mail. The possibility that contraband will be enclosed in letters, even those from apparent attorneys, surely warrants prison officials' opening the letters" (emphasis in original).

Protection of the privacy of attorney mail in this fashion is imperfect; the prison employee who opens the letter will have to glance at the content to verify its bona fides. But the imperfection is necessary to protect the prison's interest in security—and is lessened by allowing prisoners to engage in unmonitored phone conversations with their lawyers. Wisconsin allows this, Wis. Admin. Code § DOC 309.39(6)(a), as do federal regulations in the case of federal prisoners. See 28 C.F.R. § 540.102; see also *United States v. Novak*, *supra*, 531 F.3d at 100-04.

The approach sketched in *Wolff* to lawyer-prisoner mail may not be ideal, but it is the best that has been suggested, and that's good enough.

The case law, which in this and other respects is unclear about the nature and scope of the prisoner's right to be present when mail from his lawyer is opened, compare *Al-Amin v. Smith, supra*, 511 F.3d at 1333, with *Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005), and *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997), has yet to converge on whether the unjustified opening of such mail is a violation of the right of access to the courts or merely, as intimated in *Kaufman* and held in *Gardner*, a potential violation. *Lewis v. Casey, supra*, in the related context of challenges to the adequacy of a prison's library or legal assistance program, requires a "demonstrat[ion] that the alleged shortcomings in the library or legal assistance program hindered [the prisoner's] efforts to pursue a legal claim." 518 U.S. at 351; see also *Stanley v. Vining*, 602 F.3d 767, 770-71 (6th Cir. 2010). We think there must likewise by a showing of hindrance in a claim of interference with a prisoner's communications with his lawyer.

But proof of a *practice* of reading a prisoner's correspondence with his lawyer should ordinarily be sufficient to demonstrate hindrance. *Al-Amin v. Smith, supra,* 511 F.3d at 1334; *Jones v. Brown, supra*, 461 F.3d at 359; *Davis v. Goord, supra*, 320 F.3d at 351-52. The reason is that knowledge, inferred from a policy or practice, by a prisoner's lawyer that prison officials are likely to read his communications with his client (because they refuse to

let him be present when they open the lawyer's letter to see whether it contains contraband or other illicit material) will to a high probability reduce the candor of those communications.

An isolated interference with the confidentiality of such communications is different; its effect on prisoners' access to justice is likely to be nil. Most attorney-client communications consist of the client's describing what happened to him and the lawyer's explaining what legal theories might fit the client's factual narrative. Much of this material will find its way into the pleadings and briefs and thus be shared with the opponent. And under the Prison Litigation Reform Act much such information will be shared with prison officials well in advance of litigation, as part of the required process of exhausting internal prison remedies. 42 U.S.C. § 1997e(a); 28 C.F.R. § 40.1(d); *Lewis v. Washington*, 300 F.3d 829, 833-34 (7th Cir. 2002).

In light of these realities, the Supreme Court made clear in *Weatherford v. Bursey*, 429 U.S. 545, 554-59 (1977), that the interception of a criminal defendant's confidential communications with his lawyer is subject to harmless-error analysis; and this must be true, and is, in prisoners' civil litigation as well. E.g., *Davis v. Goord*, *supra*, 320 F.3d at 351; *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990). Indeed, not only the Prison Litigation Reform Act, but also the far greater rights of pretrial discovery in civil than in criminal litigation, make it unlikely that isolated interferences with attorney-client communications in prisoner cases will block the prisoner's access to meaningful justice.

If there is a violation and it is not harmless, what should be the remedy? Proof of damages (other than nominal damages) often will be impossible. See *Altizer v. Deeds*, *supra*, 191 F.3d at 543; but see *Sallier v. Brooks*, *supra*, 343 F.3d at 880. But injunctive relief may be a viable alternative, especially if the prison has a practice of opening attorney mail outside the client's presence. See *Jones v. Brown*, *supra*, 461 F.3d at 361.

Turning at last to the particulars of this case, we note that all nine letters to the plaintiff that were opened without his being present were from courts or agencies rather than from his lawyer. (None was outgoing mail.) One letter was from the district court and the others were from the Office of Immigration Review in the Department of Justice (two letters), Immigration and Customs Enforcement in the Department of Homeland Security (two letters), and the Wisconsin Department of Corrections (four letters). The court order, which granted the plaintiff's request for leave to proceed on appeal *in forma pauperis*, is a public document. The remaining letters, though nonpublic, are not the kind of documents whose perusal by prison officials would give them an edge in litigation. The plaintiff points to the sheer number of legal letters to him that were opened out of his presence as evidence of a practice of opening legal mail. But as long as the prison confines itself to opening letters that either are public or if private still are not of a nature that would give the reader insights into the prisoner's legal strategy, the practice is harmless and may be justified by the volume of such mail that a litigious prisoner can generate. The plaintiff does not claim to have

been intimidated by the practice; and as in *Kaufman v. McCaughtry*, *supra*, 419 F.3d at 686, he has "offered no evidence that his ability to litigate any matter was affected by the defendants' actions."

It's true that Wisconsin law provides that mail from certain officials and organizations, both state and federal, may be opened only in the inmate's presence. Wis. Admin. Code § DOC 309.04(3). That law may have been violated in this case (an issue on which we express no view). But a violation of state law is not a ground for a federal civil rights suit.

AFFIRMED.