NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 4, 2010
Decided December 15, 2010

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 10-1211

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 1:08-CR-10100-001 |
| ADRAIN ROBINSON, *Defendant-Appellant*. | Michael M. Mihm, *Judge*. |

**O R D E R**

A jury found Adrain Robinson guilty of one count of conspiring to possess with intent to distribute more than five kilograms of cocaine, *see* 21 U.S.C. §§ 841(a)(1), 846, and two counts of distributing cocaine, *see id*. § 841(a)(1). Because Robinson has at least two prior felony drug convictions, he was subject to a mandatory life sentence, *see id*. § 841(b)(1)(A), which the district court imposed. Robinson appealed. His appointed lawyers have filed an *Anders* brief in which they argue that there is no nonfrivolous ground for appeal. *See Anders v. California*, 386 U.S. 738 (1967). Robinson has not responded to the brief despite being invited to do so. We discuss only the potential arguments that counsel identify in their facially adequate brief. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

The government's case against Robinson was overwhelming. Five witnesses took the stand and attested to Robinson's high-level role in the Peoria cocaine trade. Two had

participated in controlled buys arranged by Robinson, the details of which were recounted at trial and corroborated by audio recordings and testimony from members of the surveillance teams.  Anthony Davis, Robinson's son and co-conspirator, told the jury that he spent two years helping his father run the trafficking operation, and Antquint Cox, Robinson's cousin, identified himself as one of Robinson's primary suppliers.  The government also introduced distributable quantities of cocaine recovered from Davis, additional quantities recovered from a stash house linked to Robinson, and currency used during a controlled buy that was recovered from Robinson's person.

Counsel consider whether Robinson could argue that a mistrial was warranted on the ground that the government interfered with his attorney-client relationship (and thus his Sixth Amendment right to counsel) by obtaining transcripts of jail-house calls between Robinson and his lawyer.  The government had disclosed the transcripts on the eve of trial, prompting Robinson's motion for a mistrial.  The district court denied the motion because Robinson lacked proof that the government reviewed privileged conversations.  The government on the other hand offered testimony from the officials who reviewed the transcripts—an FBI agent and a federal prosecutor—who said they had been careful not to review transcripts of calls between Robinson and his attorney.  The officials said that they had monitored only a week's worth of calls, and those only for security purposes, to determine whether threats had been made against witnesses.  The government did not seek to admit the conversations into evidence.

We agree with counsel that appealing this matter would be frivolous.  True, the Sixth Amendment right to counsel includes the right of a defendant to speak candidly with his attorney without government interference.  *See Denius v. Dunlap*, 209 F.3d 944, 954 (7th Cir. 2000); *cf Guajardo-Palma v. Martinson*, 2010 WL 3619782 at *1 (7th Cir. Sept. 20, 2010) (suggesting that interference with attorney-client confidential communication may violate right of access to courts or due process right to fair hearing).  But because neither investigator reviewed conversations between Robinson and his lawyer, Robinson could not possibly show an infringement on his relations with his attorney, let alone one that prejudiced his defense at trial, *see United States v. DiDomenico*, 78 F.3d 294, 299-301 (7th Cir. 1996).

Counsel next consider whether Robinson could raise any nonfrivolous objections to the district court's evidentiary rulings.  First, counsel question whether Robinson could challenge the district court's refusal to permit the impeachment of Officer Tyler McCoy, a government witness, on the basis that he had, on an unrelated occasion, failed to disclose in an accident report that he drank alcohol hours before using a squad car without permission, and then drove it into a ditch.  The defense argued that the omission is probative of McCoy's character for lack of truthfulness and sought to introduce it as a basis for

impeachment under Federal Rule of Evidence 608(b).  The district court allowed the defense to question McCoy about his unauthorized use of the car, but ruled that questions about alcohol were off limits.

Counsel correctly conclude that this contention would be frivolous.  Rule 608(b) bars extrinsic evidence of conduct bearing on a witness's character for truthfulness, but gives trial courts discretion, subject to Federal Rule of Evidence 403, to permit cross-examination about such conduct.  *See United States v. Holt*, 486 F.3d 997, 1002 (7th Cir. 2007).  As the district court pointed out, the defense had an opportunity on cross-examination to impeach McCoy's character for truthfulness by questioning him about his unauthorized use of the vehicle.  The district court reasonably concluded that the probative value of a secondary line of questioning about alcohol was marginal, outweighed by the danger of unfair prejudice and the risk that the proceedings would be sidetracked.  *See United States v. Acosta*, 534 F.3d 574, 592 (7th Cir. 2008).

Counsel also consider whether Robinson could challenge on hearsay grounds the district court's decision to admit statements from Robinson's alleged co-conspirators Erin Alexander and Roosevelt Jones.  Before trial the government filed a *Santiago* proffer to establish that Robinson was part of a conspiracy with Alexander and Jones, *see United States v. Santiago*, 582 F.2d 1128 (7th Cir.1978), *overruled on other grounds by Bourjaily v. United States*, 483 U.S. 171 (1987), so that it could introduce out-of-court statements from the two under the co-conspirator exception to the hearsay rule.  With respect to Alexander's statement, the government said a witness would testify that Alexander approached Robinson while he was at an exotic-dance club and warned him that she recognized one of the patrons as an undercover agent and feared they were under investigation.  As for Jones's statement, a different witness would testify to hearing Jones describe Robinson as one of his regular suppliers of cocaine.  Under the co-conspirator exception to hearsay, statements by a conspirator may be admitted against fellow conspirators if the government proves by a preponderance of evidence that the defendant and the declarants participated in a conspiracy, and the statement was made in furtherance of the conspiracy.  FED. R. EV. 801(d)(2)(E); *United States v. Prieto*, 549 F.3d 513, 523-24 (7th Cir. 2008).

The district court properly admitted the statements under Rule 801(d)(2)(E).  The government submitted ample evidence linking Jones and Alexander to the conspiracy.  Two witnesses testified that Robinson regularly supplied Jones with cocaine and that Jones and Robinson had agreed to replenish each other's supply should one's run low.  As for Alexander, a witness recalled her alerting Robinson to the presence of an undercover agent and, on Robinson's instructions, following the agent to gather information about his car. Further evidence of her involvement came from Anthony Davis, Robinson's son and acknowledged co-conspirator, who testified at trial that he accompanied Robinson on a visit

to Alexander, at which time he gave her between one and two ounces of cocaine.  The government also established that Jones and Alexander made the statements in furtherance of the conspiracy—Jones during a drug deal, while awaiting a delivery from Robinson, Alexander during a surveillance operation, having recognized an undercover agent from a previous arrest.

Counsel also consider whether Robinson could argue that the court erred in denying a new trial based on statements in the government's closing rebuttal that could be construed as disparaging to defense counsel.  The defense counsel opened his closing argument with an allegory about the difficulty of corroborating, an unlikely—but not implausible—story involving a fish that leaped from a river and landed at his feet.  The prosecutor invoked the fish story in his rebuttal, and in doing so joked that perhaps it was "somebody from greater powers simply trying to get [defense counsel] to turn his life around.  Maybe he'll be a prosecutor one day."  This remark was not improper.  A harmless joke, the remark neither disparaged the credibility of the defense counsel nor shifted the jury's attention from the legal issues.  *See United States v. Xiong*, 262 F.3d 672, 675 (7th Cir. 2004).

Counsel also reject as frivolous an argument that the district court abused its discretion by allowing Officer Loren Marion, III, to testify as an expert about cocaine distribution.  But while Marion had never before offered expert testimony in a powder cocaine case, he had the education and experience that we have recognized as qualifying an officer as an expert on drug distribution, including specialized training and extensive field work.  *See United States v. Parra*, 402 F.3d 752, 759 (7th Cir. 2005); *United States v. Allen*, 269 F.3d 842, 846 (7th Cir. 2001).

Finally, the government has acknowledged that a federal agent it called during Robinson's trial may have given false testimony.  The testimony concerns some $40,000 in cash seized during searches conducted in this case.  The agent testified that he placed the $40,000 into a "seized funds account," but according to a letter recently submitted by the U.S. Attorneys office, those funds are now missing, and the agent has since made inconsistent statements to investigators about what he did with them.  Because neither the whereabouts of the money nor the agent's credibility was crucial to the verdict, we are satisfied that this development has no bearing on counsels' motion to withdraw.  We trust, however, that the district court will follow up with investigators on what appears to be evidence of fraud on the court.

Accordingly, we GRANT the motion to withdraw and DISMISS the appeal.