**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 13, 2017[*]
Decided April 27, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

No. 16-1329

| | |
|---|---|
| DAVID DELGADO, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 1:15-cv-01180 |
| | |
| SALVADOR GODINEZ, et al., | Sara Darrow, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Illinois prisoner David Delgado asserts in this suit under 42 U.S.C. § 1983 that staff at Pontiac Correctional Center violated his First Amendment right of access to the courts and his right to equal protection of the laws. The district court dismissed the suit

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See FED. R. CIV. P. 34(a)(2)(C).

at screening for failure to state a claim, see 28 U.S.C. § 1915A, and Delgado appeals. We affirm.

Because the lawsuit was dismissed at screening, we accept Delgado's factual allegations as true for present purposes. See *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Delgado's complaints stem from prison staff's interactions with a lawyer representing him in what he characterizes as a "criminal case." Delgado does not elaborate, but in the district court he submitted an e-mail from the lawyer referring to counsel's preparation of a petition for collateral relief under the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122. Delgado met with the attorney in May 2013 in a "contact" conference room (i.e., one without physical barriers where they could pass documents freely). Their meeting began at 9:00 a.m. and continued until 2:30 p.m., when three guards entered without knocking and ended it. Two months later the lawyer returned to Pontiac, but this time he was compelled to meet with Delgado in a booth having a glass partition separating the two men. Communication required using a device in the glass partition that allowed staff to monitor his conversations. Indeed, a posted sign warned that "all conversations are recorded."

In formal grievances and in letters to the administrative staff, Delgado complained that the abrupt end of his contact visit with the lawyer and the later substitution of the booth violated his constitutional rights. Delgado's attorney likewise informed prison administrators that he needed to meet with his client in a contact conference room to facilitate review of documents. A lawyer for the Department of Corrections responded that the glass-partitioned booths allow for confidential communications and added that guards are available to pass documents between attorney and client. The attorney passed along to Delgado the message that Pontiac's policy requires lawyers to use the booths when meeting with inmates unless there is a "good reason" for a contact visit. (A copy of this written communication is in the record.) The lawyer admitted that they did not have such a reason. Delgado also was told by a staff member that if a contact conference room is requested, at least two days' notice must be given so that a guard can be assigned to sit outside the room while the lawyer meets with the inmate.

Delgado's initial complaint characterized the interruption of his first meeting with counsel and the later denial of use of a contact conference room as violations of the First, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, as well as the Geneva Conventions. At screening the district court concluded that, at most, Delgado might have a claim that the three guards who entered the conference room denied him access to the courts in violation of the First Amendment. But to pursue that claim, the court told Delgado, he would have to identify a resulting detriment to ongoing

litigation. The court thus dismissed the complaint with leave to amend. Delgado offered two amended complaints, but neither one cured the critical defect, and so the district court dismissed the lawsuit with prejudice.

On appeal Delgado stresses two arguments: that both incidents denied him meaningful access to the courts and that his right to equal protection was violated because other inmates were allowed contact visits but he was not. We have recognized that inhibiting private communication with an attorney may constitute a denial of meaningful access to the courts. *Guajardo-Palma v. Martinson*, 622 F.3d 801, 802 (7th Cir. 2010); *Dreher v. Sielaff*, 636 F.2d 1141, 1143 (7th Cir. 1980). But to pursue such a claim, Delgado must identify an underlying nonfrivolous claim that the prison officials' actions impeded. See *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 351–53 (1996). Delgado has hinted that he and counsel were working on a postconviction petition, but he has never identified that matter or suggested that the two incidents frustrated his ability to pursue it. Thus the district court correctly concluded that Delgado fails to state a First Amendment claim.

Delgado's equal protection claim was equally flawed. The court understood Delgado to allege that Pontiac has adopted a presumption against contact visits with lawyers, and thus reasoned that Delgado could not plausibly allege that he was "arbitrarily singled out for unfair treatment." Delgado believes that this misconstrued his contention, which was that even though Illinois prisons allow contact visits with attorneys, he was denied a contact visit because Pontiac was retaliating against his attorney and trying to learn whether Delgado was planning to file suit against its staff. There are several problems with this theory. First, Delgado has no right to vindicate his attorney's rights. See *Allen v. Wright*, 468 U.S. 737, 751 (1984) (noting "general prohibition on a litigant's raising another person's legal rights"); *United States v. Holm*, 326 F.3d 872, 875–76 (7th Cir. 2003); *Massey v. Helman*, 196 F.3d 727, 739–42 (7th Cir. 1999). Second, Delgado's own pleadings show that he was not treated differently from other inmates. We may look to the content of documents that a plaintiff attaches to his complaint and relies upon to form the basis of a claim. *Carroll v. Yates*, 362 F.3d 984, 986 (7th Cir. 2004); *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753–54 (7th Cir. 2002). Delgado attached communications from his attorney along with emails between the lawyer and DOC counsel, presumably to show that his attorney faced retaliation. Yet those attachments describe Pontiac's policy of restricting contact visits with lawyers in favor of using the booths, and Delgado never disputes that such a policy exists. His allegation that some inmates are allowed contact visits is consistent with Pontiac's policy of curtailing use of the conference rooms without a "good reason"

to make an exception. And it was Delgado's lawyer who opined that Delgado did not have a good reason.

Delgado nonetheless urges that two other inmates, whose affidavits are included in his appellate brief, support his contention that he was treated differently because they were allowed contact visits with their attorneys. When reviewing a dismissal for failure to state a claim, we may consider new factual allegations made in an appellate brief. See *Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017); *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). But these affidavits change nothing because the other inmates are silent about the processes that their attorneys used to obtain a contact visit.

We have reviewed Delgado's remaining contentions and only one merits comment. Delgado asserts that the district court incorrectly stated in the Merit Review Order that there is no constitutional right to a grievance process. Delgado appears to be confusing the right to *grieve* with the right to a grievance *process*. He has a First Amendment right to "petition the government for a redress of grievances," *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996), but he does not have a substantive due process right to an effective prison grievance process, see *Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008). If as a practical matter the grievance process is so ineffective as to be unavailable to the prisoner, the only consequence is that he is relieved of the duty to exhaust. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). Nothing suggests that Pontiac's procedures were so deficient, however, and no one has argued that Delgado failed to exhaust. He has therefore had full access to the courts, which satisfies his procedural due process rights. See *Grieveson*, 538 F.3d at 772 n.3.

The district court informed Delgado that he incurred a strike, see 28 U.S.C. § 1915(g), for filing a lawsuit that fails to state a claim. This appeal counts as a second strike.

AFFIRMED.