| NONPRECEDENTIAL DISPOSITION |
|:---:|
| To be cited only in accordance with Fed. R. App. P. 32.1 |

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 20, 2018*
Decided July 30, 2018

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-1075

| | |
|---|---|
| DAVID M. WILSON, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 15-cv-466-wmc |
| | |
| MICHAEL DITTMANN, et al., | William M. Conley, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

David Wilson, an inmate at the Columbia Correctional Institution, appeals the entry of summary judgment for two prison officials in this suit asserting violations of his constitutional rights. Wilson maintains, first, that the prison's security director and warden disciplined him without due process when they intervened in his disciplinary hearing, which resulted in his being placed in restrictive housing. Wilson also contends

---

* We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

that the prison's security director violated his rights under the Eighth Amendment by failing to provide him with his multiple sclerosis medication during his time in restrictive housing. The district court concluded that Wilson had not introduced evidence that would permit an inference that the defendants denied him the process he was due, or that the defendants knew about him not receiving his medication. We affirm the judgment.

After Columbia security staff investigated complaints from three inmates that Wilson had inappropriately touched them or spoken to them in a sexually inappropriate manner, Wilson was written up in a conduct report accusing him of violating state regulations that prohibit inmates from engaging in various types of sexual behaviors. *See* Wis. Admin. Code § DOC 303.14 and 303.15. At his disciplinary hearing, Wilson testified and provided evidence in his defense. The hearing officers determined that the complaints of the three inmates did not corroborate each other; the officers' understanding of another code provision, § DOC 303.84(6), was that at least two of the complaints had to be about the same incident to serve as corroboration. Later that day, however, Security Director Lucas Weber and the Deputy Warden told the hearing officers that they disagreed with this interpretation and expressed their view that the complaints about the separate incidents *did* corroborate each other. Weber directed the hearing officers to change the finding to guilty, which they did.

After being placed in restrictive housing (a form of disciplinary segregation), Wilson began the internal appeal process. He appealed the decision to Warden Michael Dittmann, who upheld it. Wilson then appealed to the inmate complaint examiner, who recommended that the decision be reversed based on her view that Wisconsin Administrative Code Chapter DOC 303 did not allow a security director to override the decision made by the hearing officer at a disciplinary hearing. Dittmann accepted the recommendation, and had Wilson—who by this time had spent 80 days in restrictive housing—returned to the general population.

During his time in restrictive housing (which included one month with additional restrictions when the prison was placed on lockdown), Wilson did not receive all of his prescribed multiple sclerosis medication. It is undisputed that over the 80 days Wilson missed at least 13 doses of his daily duloxetine medication and at least 51 of 324 doses of gabapentin (he was prescribed 4 doses daily). Wilson also asserts that each week he was given only one of his three prescribed copaxone injections. As a result of this missed medication, Wilson says that he suffered great pain and temporary loss of mobility in his limbs. He alleges that he complained about his lack of medication to a

prison officer, Captain Boodry, who told him that he would email Weber about the matter.

After Wilson was released from restrictive housing, he filed this suit. He asserted that Weber violated due process by intervening in the disciplinary process and directing the hearing officer to change his finding from "not guilty" to "guilty," and that Warden Dittmann violated due process by upholding that decision. Wilson also asserted that Weber acted with deliberate indifference by failing to provide him with his multiple sclerosis medications while he was in restrictive housing.

The court granted the defendants' motion for summary judgment. The court acknowledged that there might be some dispute about whether Wilson had exhausted his administrative remedies with regard to his claim of medical deliberate indifference, but proceeded to the merits and concluded that Wilson had not provided any evidence for a jury to find that Weber had "actual knowledge" that he had been denied his multiple sclerosis medications while in restrictive housing. The court pointed out that Wilson submitted no admissible evidence to support his assertion that Captain Boodry emailed Weber, let alone that Weber ever received any such email. As for Wilson's due process claim, the court concluded that, even if it assumed that Wilson's time in restrictive housing involved a liberty interest, Wilson failed to submit evidence that would permit an inference that either Weber or Dittmann—with regard to the role they played in the disposition of the conduct report—acted arbitrarily in an effort to punish him.[1]

On appeal Wilson begins with his medical deliberate-indifference claim and maintains that he has identified a fact question regarding Weber's knowledge of his lack of medication while confined in restrictive housing. He again highlights Captain Boodry's assent to inform Weber that he was not getting his medications. But surviving summary judgment requires evidence, not speculation. *See Thornton v. M7 Aerospace LP*, 796 F.3d 757, 768 (7th Cir. 2015). Even if Boodry did tell Wilson that he would email Weber, that is insufficient to convince a reasonable jury that Weber actually knew that Wilson was being denied his medications.

---

[1] The district court also correctly dismissed Wilson's claims against Captain Lucas Wogernese and Unit Manager Lindsey Walker—the two other defendants named in this case—because Wilson did not allege that either official had any control over Weber's decision to reverse his guilty finding, or had any knowledge that Wilson was being denied his multiple sclerosis medications.

Turning to his due-process claim, Wilson asserts that "[t]he court has got the facts wrong" and argues that a reasonable juror could find that Weber acted arbitrarily to punish him. He adds that his case was the only time that Weber ever had changed a hearing officer's decision, and surmises that he was punished because Weber must have had a "vendetta" against him.

But Wilson provides no evidence contradicting the defendants' explanation that they recommended another outcome based on their different interpretation of the relevant code provision. Even though the inmate complaint examiner determined that the code did not allow Weber to override the hearing officer's decision, a breach of DOC regulations or policies is not a ground for a federal civil-rights suit. *See Guajardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010). In any event, Wilson was given all the additional process he was due. An inmate being transferred to a more restrictive prison need be given at most only "some notice" of the reasons for the transfer, an opportunity to present his views, and an informal review procedure following the decision. *Westefer v. Neal*, 682 F.3d 679, 684–85 (7th Cir. 2012) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 212 (2005); *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)). Wilson was notified of the conduct report several days before the hearing; he testified at the hearing and presented witness statements in his defense; and he made (successful) use of the prison's review procedure.

AFFIRMED