**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 4, 2014[*]
Decided November 4, 2014

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 14-1438

| | |
|---|---|
| ARNOLD CASTILLO, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 13-cv-460-JPG |
| YOLANDA JOHNSON, et al., *Defendants-Appellees.* | J. Phil Gilbert, *Judge.* |

**O R D E R**

Arnold Castillo, an Illinois prisoner, appeals from the dismissal of his civil-rights suit challenging, on Fifth Amendment and due-process grounds, the discipline and prison transfer that he received after he stabbed a guard. Because the discipline and transfer did not offend those constitutional principles, we affirm the judgment.

---

[*]The defendants were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that the case is appropriate for summary disposition. *See* FED. R. APP. P. 34(a)(2)(C).

Castillo attacked a guard by stabbing him 25 times with a sharp object at Stateville Correctional Center in 2010. When Castillo was interviewed about the incident, an investigator advised him that he had the right to remain silent, and Castillo invoked that right. An internal affairs officer, defendant Ricardo Tejeda, charged Castillo with six offenses arising from the incident. One charge was for "impeding or interfering with an investigation" because Castillo refused to give a statement; the other five were for the stabbing itself. Two months before his hearing, Castillo was transferred to Tamms Correctional Center, Illinois's former supermax facility, which kept all prisoners in segregation nearly 23 hours each day. At the hearing at Tamms, Castillo asked for more time to present witnesses, but the prison refused the request because he did not properly identify the witnesses. It also denied his request for staff assistance.

After the hearing, Castillo was found guilty on all charges. The chair of the disciplinary committee, David Mitchell, and Tamms's warden Yolanda Johnson (both named as defendants), punished Castillo with the loss of one years' good-conduct credit, "indeterminate segregation," a demotion in prisoner status, and restrictions on commissary use, yard access, and visitors. The punishments are not allocated to particular charges. Castillo remained at Tamms until it closed in 2013; he is now incarcerated at Pontiac Correctional Center.

Castillo sued under 42 U.S.C. § 1983, alleging three constitutional violations: First, the defendants violated the Fifth Amendment by punishing Castillo for invoking his right against self-incrimination; second, they violated his right to due process by transferring him to Tamms two months before his disciplinary hearing and doing so to retaliate for his silence; third, Johnson and Mitchell violated due process again by preventing Castillo from presenting improperly identified witnesses at his hearing and refusing to give him staff assistance. Castillo asked that the court vacate the charge for impeding or interfering with an investigation and award him compensatory and punitive damages.

The district court screened the complaint, *see* 28 U.S.C. § 1915A, and dismissed it with prejudice. The court first concluded that the charge for impeding the investigation did not violate the privilege against self-incrimination. It reasoned that the prison could use Castillo's silence to draw an adverse inference in its non-criminal, administrative proceeding. Second, his transfer to Tamms did not offend due process because it was "clearly for the purpose of administrative or investigative segregation," so Castillo had

no liberty interest in the transfer. Finally, the court ruled that Castillo's disciplinary hearing complied with due process.

Castillo moved for postjudgment relief, *see* FED. R. CIV. P. 59(e), and sought to file an amended complaint. He elaborated on his claim that the decision to transfer him to the supermax facility was made without due process. The district court denied both motions, concluding that Castillo's transfer claim was precluded by an earlier class-action lawsuit, *Westefer v. Neal,* 682 F.3d 679 (7th Cir. 2012). In *Westefer,* the court said, the class represented all inmates transferred to Tamms since 1998. The court therefore concluded that Castillo was a member of the class and bound by the earlier judgment.

On appeal Castillo first argues that he sufficiently pleaded a claim under the Fifth Amendment. The Fifth Amendment privileges a person to refuse to answer a question if the answer has "some tendency to subject the person being asked the question to criminal liability." *Evans v. City of Chicago,* 513 F.3d 735, 743 (7th Cir. 2008) (internal quotation marks, italics, and citation omitted); *see Minnesota v. Murphy,* 465 U.S. 420, 426 (1984); *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973). Incarceration limits but does not extinguish this right. *McKune v. Lile,* 536 U.S. 24, 36 (2002) (plurality opinion); *Roman v. DiGuglielmo,* 675 F.3d 204, 210 (3d Cir. 2012). The privilege does not prevent prison administrators from drawing adverse inferences from a prisoner's silence. *Baxter v. Palmigiano,* 425 U.S. 308, 317 (1976). But prison staff may violate the Fifth Amendment if they punish "an inmate's silence in and of itself" without some other evidence of guilt, *id.*, and the punishment is severe, such as the loss of an earned release date, *see McKune,* 536 U.S. at 52 (opinion of O'Connor, J., concurring with the plurality on narrowest grounds).

Castillo's Fifth Amendment claim, however, faces several insuperable obstacles. First, if he believes that his conviction for impeding the investigation cost him credit toward an early release, the relief he seeks is unavailable in a § 1983 suit. Vacating that conviction would shorten his confinement, *see Montgomery v. Anderson*, 262 F.3d 641, 644–45 (7th Cir. 2001), and a challenge to the length of confinement must be presented in a petition for a writ of habeas corpus under 28 U.S.C. § 2254(b)(1)(A), *see Preiser v. Rodriguez*, 411 U.S. 475, 488–90 (1973). In addition, we could not award damages for his lost credit because that relief would necessarily imply that his lost credit is invalid. Under *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997), Castillo may not use a § 1983 suit to seek relief that is inconsistent with a still-intact order of confinement. *See Muhammad v. Close*, 540 U.S. 749, 750–51 (2004); *Burd v. Sessler*,

702 F.3d 429, 432 (7th Cir. 2012); *Miller v. Ind. Dep't. of Corr.*, 75 F.3d 330, 331 (7th Cir. 1996).

But even if Castillo challenged only his indeterminate segregation on the belief that, as punishment for his silence, its severity violates the Fifth Amendment, the claim would still fail. For Castillo's segregation to violate the Fifth Amendment, it had to be based solely on his silence. *See Baxter*, 425 U.S. at 317. But Castillo did not argue to the district court, allege in his original or proposed amended complaint, or maintain here that his segregation is solely attributable to his silence. Nor can he. Only one of the six charges against Castillo (interfering with an investigation) was based on his silence; the other five convictions, which he does not contest, were for the more serious offenses of violently stabbing the guard. Moreover, the maximum penalty for interfering with an investigation is just one year of segregation; the maximum penalty for violent assault is indeterminate segregation. *See* ILL. ADMIN. CODE tit. 20, § 504, tbl. A. Given that Castillo does not dispute the violent offenses for which he faced and received indeterminate segregation, he cannot plausibly contend that his segregation is based solely on his silence. Accordingly, the complaint does not assert a valid Fifth Amendment claim.

Castillo next contests the dismissal of his claim that the defendants violated his right to due process by transferring him to Tamms before holding a disciplinary hearing. The district court believed that the class-action lawsuit brought by Tamms prisoners in *Westefer* precludes his individual due-process challenge. Claim preclusion is an affirmative defense, *see Walczak v. Chi. Bd. of Educ.*, 739 F.3d 1013, 1016 n.2 (7th Cir. 2014), but the district court may raise it if it is "so plain from the face of the complaint that the suit can be regarded as frivolous," *Best v. City of Portland*, 554 F.3d 698, 700 (7th Cir. 2009) (internal quotation marks and citation omitted). We need not decide whether the preclusion defense applies because Castillo's claim is defective on the ground that his pre-hearing time at Tamms was too short to deny him a liberty interest. Castillo was at Tamms for only two months before his hearing was held and he was convicted of stabbing the prison guard. We will assume, as the defendants did in *Westefer*, 682 F.3d at 682, that the conditions in Tamms were harsh enough to require a hearing before a lengthy transfer, *see Sandin v. Conner*, 515 U.S. 472, 484 (1995). But two months in that prison environment without a pre-transfer hearing was too brief to affect a liberty interest, so due process was not violated here. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009); *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008).

That brings us to Castillo's final claim—that his two-year incarceration in Tamms after his hearing denied him a liberty interest without due process because he did not

receive extra time to present witnesses or receive staff assistance. But we agree with the district court that Castillo has not stated a claim for relief on this claim. To satisfy due process, a prison must give inmates advance, written notice of charges before a hearing and a written statement by the factfinder explaining the evidence relied on and reasons justifying any disciplinary action. *See Wolff v. McDonnell,* 418 U.S. 539, 563–64 (1974); *Jones v. Cross,* 637 F.3d 841, 845 (7th Cir. 2011). All of that occurred here. Prisoners are also entitled to call witnesses but only if so doing will not interfere with institutional safety. *See Wolff,* 418 U.S. at 566; *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007). Castillo did not properly identify the witnesses he wanted the extra time to present, so the prison had no way to determine if his request threatened prison safety. It therefore reasonably denied him his request for more time. *See Pannell v. McBride,* 306 F.3d 499, 503 (7th Cir. 2002); *Forbes v. Trigg,* 976 F.2d 308, 317–18 (7th Cir. 1992). Likewise, prisoners do not have the right to staff assistance, *Wolff,* 418 U.S. at 570; *Jackson v. Carlson,* 707 F.2d 943, 948–49 (7th Cir. 1983), so Castillo was not entitled to a continuance on that ground either. Thus the defendants' refusal to postpone the hearing did not violate due process.

Accordingly, we AFFIRM the judgment of the district court.