> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 23, 2015[*]
Decided March 5, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 14-2327 | Appeal from the United States District Court for the Northern District of Indiana, Indianapolis Division. |
| JAY F. VERMILLION, *Plaintiff-Appellant*, | |
| *v.* | No. 3:11-CV-280 JVB |
| MARK E. LEVENHAGEN, *et al.*, *Defendants-Appellees*. | Joseph S. Van Bokkelen, *Judge*. |

## O R D E R

Jay Vermillion, an Indiana prisoner, sued more than 20 Department of Correction employees under 42 U.S.C. § 1983 claiming that each of them retaliated for his invocation of the right to remain silent when questioned about the escape of fellow prisoners. At screening, *see* 28 U.S.C. § 1915A, the district court allowed Vermillion to

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

proceed only on a claim that his transfer to a "supermax" facility after the aborted interview violated his right to due process. The district court then granted summary judgment for the defendants on the ground that Vermillion had failed to exhaust his administrative remedies on that claim. On appeal Vermillion challenges this ruling as well as the district court's dismissal of most of his claims at screening. We conclude that the defendants failed to establish their affirmative defense of failure to exhaust and that the district court should have allowed Vermillion to at least proceed with his additional claims arising from the same factual basis as the due-process claim.

In his second amended complaint, Vermillion alleges that on July 29, 2009, he was interviewed by Internal Affairs investigators after several fellow inmates had escaped from the Indiana State Prison ("ISP"). The interviewers accused him of being involved in the escape and threatened to pursue criminal charges, prompting Vermillion to stop answering their questions. Following this encounter, according to Vermillion, the three interviewers along with another investigator from Internal Affairs and five administrators from ISP, Westville Correctional Facility, and DOC headquarters retaliated for his silence by immediately placing him in punitive segregation at ISP and then on August 12, 2009, transferring him to Westville, where he was housed in the Maximum Control Segregation Unit. This transfer, Vermillion alleges, occurred after two of the administrators falsified documents to exaggerate his security classification. All nine of these employees are named defendants.

Vermillion claims that for more than three years after the transfer, he was confined in his segregation cell at Westville for at least 23 hours per day without personal interaction with other inmates, and during those years, five of the same nine employees—joined by many others—continued retaliating against him for invoking his right to remain silent. This retaliation, Vermillion alleges, ranged from intercepting his mail to mishandling the administrative hearings concerning a disciplinary ticket for trafficking contraband.

Vermillion's operative complaint followed two earlier versions that the district court had rejected on the ground that he was trying to join unrelated claims against unrelated defendants. *See* FED. R. CIV. P. 18, 20(a)(2), 21; *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). After Vermillion's third attempt, the district court dismissed the majority of his claims and defendants on the same ground, allowing him to proceed solely on a due-process claim against the five administrators allegedly involved in his transfer to Westville. *See Wilkinson v. Austin*, 545 U.S. 209, 223–25 (2005) (holding that transfer to "supermax" facility may implicate federally protected liberty interest if

conditions there impose an "atypical and significant hardship"); *Westefer v. Neal*, 682 F.3d 679, 684–86 (7th Cir. 2012) ("Inmates transferred to a supermax prison are entitled to informal, nonadversarial due process."). In this claim Vermillion alleges that he was transferred without "any notice, reason, or opportunity for rebuttal." He protested the district court's screening decision, arguing that his other claims are properly joined with this one. All of the claims, Vermillion insisted, arose from a broad conspiracy among the defendants to retaliate for his assertion of his Fifth Amendment right to remain silent.

The defendants remaining after the district court's screening decision moved for summary judgment on the ground that Vermillion had not exhausted his administrative remedies on the due-process claim as required by the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(a). The defendants asserted that an inmate who wants to challenge a transfer decision must submit a "classification appeal" on Form 9260 within ten days of receiving notice that he was being transferred, and Vermillion did not file a Form 9260 complaining about his transfer to Westville. Vermillion responded that prison regulations require a written appeal within ten days of receiving a "Classification Analyst's decision," not merely "notice" of transfer. And it is undisputed that Vermillion had never received a Classification Analyst's decision either before *or* after being moved to Westville. Moreover, Vermillion added, even though he never received such a decision, he submitted a Form 9260 to administrators at Westville or DOC headquarters—not once but five times—and never received a response. The defendants replied that they had not found any of these forms in the prison records and insisted that Vermillion, by his own account, had sent them to the wrong staff members if he sent them at all.

The district court concluded that Vermillion failed to exhaust because he should have, but admittedly did not, submit a Form 9260 to the proper authorities within ten days of the transfer. The transfer itself, the court determined, gave Vermillion "notice" of the decision to reclassify and transfer him.

On appeal Vermillion first challenges the district court's conclusion that he failed to exhaust administrative remedies, a decision we review de novo. *See Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). He maintains that he did not receive a Classification Analyst's decision to transfer him, and so his obligation to appeal under DOC regulations was never triggered. Under the PLRA, a prisoner must exhaust all available administrative remedies and follow administrative procedures—including time limits—before filing suit. *See* 42 U.S.C.

1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024–25 (7th Cir. 2002). Failure to exhaust is an affirmative defense, so it was the defendants' burden to establish the absence of disputed issues of material facts concerning whether Vermillion had an available administrative remedy that he failed to pursue. *See Maddox*, 655 F.3d at 720; *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).

The DOC policy at issue does not require that an inmate file a "classification appeal" within ten days of transfer or receipt of notice of a transfer. Instead, the policy directs inmates to challenge a transfer by "[s]ubmitting a written appeal within ten (10) working days from the date that the offender received the *Classification Analyst's decision*." IDOC MANUAL OF POLICIES AND PROCEDURES, No. 01-04-101 ("Classification Appeals Policy") § IV(J)(2)(b)(1) (emphasis added). The defendants do not dispute Vermillion's declaration that he never received a decision from a Classification Analyst, nor did they produce evidence of such a decision. And neither did the defendants produce evidence—or even assert—that Vermillion had reason to know that the written policy does not mean what it says and that the ten-day appeal clock starts to run when the inmate is moved, with or without a Classification Analyst's decision to appeal from. *Cf. Curtis v. Timberlake*, 436 F.3d 709, 712 (7th Cir. 2005) (concluding that prisoner had exhausted available remedies by following unofficially modified procedures).

In short, the defendants have never contested Vermillion's assertion that the DOC did not provide him with any decision that its regulations directed him to appeal—or that he *could* appeal—before filing this lawsuit. As Vermillion notes in his brief to this court, without a decision to review, he would have "no idea what the decision was, wh[ose] decision it was, or what an appeal could possibly be based upon." Vermillion was required to exhaust only those remedies that were available to him, and "when prison officials prevent inmates from using the administrative process … , the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The defendants cannot fault Vermillion for not doing more or proceeding differently than DOC procedures require. *See Hurst v. Hantke*, 634 F.3d 409, 411 (7th Cir. 2011); *Dole*, 438 F.3d at 811; *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). The defendants did not carry their burden of showing that no genuine issue of material fact exists concerning their defense of failure to exhaust. To the contrary, their inability to make that showing seems clear. Summary judgment on this ground was inappropriate.

Vermillion next challenges the district court's decision to dismiss all but the due-process claim from his second amended complaint. His operative complaint attributes everything that happened to him while in segregation at Westville to a broad conspiracy to retaliate for invoking the Fifth Amendment. The district court rejected as implausible Vermillion's suspicion that so many DOC employees from two different facilities were out to get him. With that conclusion we readily agree. But even without a widespread conspiracy that would encompass all of Vermillion's disparate claims against more than 20 defendants, some of his other claims can go forward. Other defendants are properly joined with the five administrators *if* the claims against the additional defendants arise from the same transaction or occurrence as Vermillion's due-process claim against the administrators. *See* FED. R. CIV. P. 20(a)(2)(A).

Vermillion argues that his transfer violated his right to due process but also was initiated for the purpose of retaliating for his refusal to answer questions about the escaped prisoners. The Fifth Amendment gives a person the right "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). This right applies in the prison disciplinary context, and prison officials may violate a prisoner's right against self-incrimination if a prisoner's silence alone results in punishment of the kind capable of compelling waiver of the right. *See Minnesota v. Murphy*, 465 U.S. 420, 434 (1984); *Baxter v. Palmigiano,* 425 U.S. 308, 317 (1976); *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995). Although not all of his claims can be linked to his assertion of this right, Vermillion plausibly alleges that more than just the five administrators were involved in retaliating against him for his refusal to talk to the Internal Affairs investigators. Vermillion claims that his placement in punitive segregation at ISP, his transfer to the Maximum Control Segregation Unit at Westville, and the alleged falsification of documents to exaggerate his security classification and keep him confined in segregation were punishments aimed at retaliating against him because he asserted his right to silence. Because this claim points to joint conduct by the five administrators and four Internal Affairs investigators and would invariably rely on some of the same facts as his due-process claim relating to the transfer, Vermillion properly joined the defendants allegedly responsible.

Once Vermillion properly joined parties under Federal Rule of Civil Procedure 20, Rule 18 allows him to join all claims he has against each defendant. *See Intercon Research Assocs., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 57 (7th Cir. 1982) (noting that "joinder of claims under Rule 18 becomes relevant only after the requirements of

Rule 20 relating to joinder of parties has been met with respect to the party against whom the claim is sought to be asserted"); 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1585 (3d ed. 2010) ("Once parties are properly joined … as to a particular claim, additional claims, whether they are related or unrelated or they are by or against all or less than all of the parties may be joined under Rule 18(a)."). Defendants Levenhagen, Morton, Brennan, Mize, and Nowatzke remained in the case after screening because Vermillion's due-process claim was asserted against them. The addition of his self-incrimination retaliation claim adds defendants Plank, Buss, Whelan, and Carrasco. Vermillion therefore properly joined *all* claims he had against these defendants. We note, however, that even though these claims are properly joined, they do not necessarily have to proceed together. Under Rule 21 the district court has the discretion to sever any claims that are "discrete and separate" in the interest of judicial economy and to avoid prejudice. *See Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000); *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985). We leave these considerations for the district court to address in the first instance.

Vermillion also argues that the district court erred in dismissing his state-law claims. Because the district court allowed only the due-process claim to proceed, the court did not separately analyze Vermillion's supplemental claims. Our decision here reinstates all claims, federal and state, against the nine defendants who are properly joined in Vermillion's lawsuit, and on remand the district court will have the opportunity to decide whether to exercise supplemental jurisdiction over the state-law claims against these defendants.

Vermillion finally argues that his request to transfer his case to the Southern District of Indiana should have been granted. As Vermillion is now imprisoned in that district, on remand the district court may, in its discretion, decide to grant the request. *See* 28 U.S.C. § 1404; *Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.*, 626 F.3d 973, 978–79 (7th Cir. 2010).

We have reviewed Vermillion's remaining arguments and conclude that none has merit. Accordingly, the district court's judgment is VACATED insofar as it dismisses any claim against defendants Levenhagen, Morton, Brennan, Mize, Nowatzke, Plank, Buss, Whelan, and Carrasco, and as to those defendants, the case is REMANDED for further proceedings consistent with this decision. In all other respects, the judgment is AFFIRMED.