**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 27, 2016[*]
Decided October 28, 2016

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 16-1349

| | |
|---|---|
| CORKY TERRY,<br>　　*Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Central District of Illinois. |
| *v.* | No. 15-1212 |
| DONALD STOLWORTHY, et al.,<br>　　*Defendants-Appellees.* | Joe Billy McDade,<br>*Judge.* |

**O R D E R**

Corky Terry, an Illinois prisoner, filed this suit under 42 U.S.C. § 1983, contending that prison officials placed him in administrative detention at Pontiac Correctional Center without due process. The district court screened Terry's amended complaint under 28 U.S.C. § 1915A and dismissed his suit for failure to state a claim. It concluded that his placement in administrative detention did not deprive him of liberty,

---

[*] We have unanimously agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. CIV. P. 34(a)(2)(C).

so no process was due. For slightly different reasons, we agree with the district court that Terry failed to state a claim, so we affirm the judgment.

Terry's claim arises from his placement into administrative detention on July 6, 2014. According to allegations in his amended complaint, which we take as true, prison officials transferred him from the general prison population to his new custody status without any notice, hearing, or explanation. About 60 days later, he received what he calls a "very vague" notice of an upcoming review of his detention. The notice, appended to the amended complaint, states the rationale for his detention:

> From confiscated documents TERRY has been identified as wanting to attempt to receive Protective Custody in order to infiltrate the unit and report his findings to other members of the LATIN FOLK organizations … to get back in the good graces with his organization.

The notice did not disclose the "confiscated documents."

A hearing at which Terry could contest this rationale occurred on his 66th day in administrative detention. (Terry appended to his amended complaint a record showing that a hearing to review his transfer occurred, with him present, on September 10, 2014.) Other records that Terry attached show that follow-up reviews occurred about every 90 days thereafter: on November 12, 2014, (without Terry present), on February 17, 2015, (with him present), on May 15, 2015, (without Terry), and on August 27, 2015 (another face-to-face review). Before each review, Terry received notices that contained the same rationale for his placement and referred to the confiscated documents, which remained undisclosed. According to these notices, Terry could contest, in writing, his continued detention and could, at the alternating reviews, be present. As of the date of his amended complaint (October 5, 2015—15 months after his transfer), Terry remains in detention. He is isolated for 24 hours a day, and he believes that, because of detention, his mental health has suffered to the point that he risks developing mental illness and "may become incompetent." He also cannot access the main library building.

The district court dismissed Terry's amended complaint. It reasoned that his removal from the general population did not atypically or significantly worsen his living conditions; therefore he had no right to process before his transfer into administrative segregation. With no process due to him, Terry failed to state a claim.

On appeal Terry contends that the district court erred in concluding that he did not have a liberty interest in avoiding administrative detention. We will assume that he is right. Even though inmates have diminished liberty interests, *Meachum v. Fano*, 427 U.S. 215, 224 (1976), they retain a right to due process before a prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Indefinite placement in harsh conditions of isolation, coupled with loss of parole eligibility, can result in an "atypical and significant hardship" implicating a liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 214–15, 224 (2005); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). In *Marion*, we determined that 240 days in harsh segregation might affect a liberty interest. *Marion*, 559 F.3d at 699. Terry has been held in administrative detention even longer, he says that conditions are harsh, and, like in *Wilkinson*, his time there could continue indefinitely.

But even if Terry's detention altered his liberty, Terry has failed to state a claim because the allegations in his complaint reveal that he received any process that he was due. "Due process" in transferring an inmate to a detention that deprives the inmate of liberty consists of, at most, "informal, nonadversary procedures" in a "reasonable time" with "some notice" of the prison's rationale for the transfer, an "opportunity [for the inmate] to present his views" in writing, and periodic reviews afterwards. *See Westefer v. Neal*, 682 F.3d 679, 684–86 (7th Cir. 2012) (quoting *Wilkinson*, 545 U.S. at 212; *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)). The records that Terry appended to his complaint show that he received this process. (Because he does not contest the accuracy of these records, we may treat them as part of the complaint. *See* FED. R. CIV. P. 10(c); *Olson v. Bemis Co.*, 800 F.3d 296, 305 (7th Cir. 2015)). The prison gave him adequate notice of the reason for his placement six days before his initial review, in the form of a paragraph describing the placement rationale. He was then allowed to challenge that rationale at his initial review. Thereafter he received periodic reviews of his continued detention every 90 days, all preceded with notice of the reasons for his detention. At half of these reviews he could appear in person to dispute his placement, and at the other half he could contest his placement in writing. These procedures satisfy due process.

Terry advances two responses, but neither is availing. First he argues that he had no opportunity to review the evidence that the prison relied upon. But the Constitution does not require the prison to supply Terry with its evidence or other formalities associated with an adversarial hearing. *See Westefer*, 682 F.3d at 684 (no right to call or cross-examine witnesses, to record the evidence, to receive a written decision, or to

appeal administratively). The prison need only furnish its reasons for proposing to detain him—to allow him an opportunity to respond—which it did before each review. *See Westefer*, 682 F.3d at 684 (stating that due process requires only 24-hour notice of reasons to a prisoner before a placement hearing).

Second Terry contends that the 66 days he had to wait before his initial review was unreasonably long. Even if we assume that it was (a point we need not decide), Terry still fails to state a claim because he does not allege that the prison's rationale for initially transferring him to administrative detention was wrong or legally insufficient. *See Codd v. Velger*, 429 U.S. 624, 628 (1977). A person may recover nominal damages for a denial of liberty without due process if a court later determines that the denial would have occurred anyway, even with more process. *Carey v. Piphus*, 435 U.S. 247, 266–67 (1978). But no due-process violation has occurred if the plaintiff does not even assert that there was a dispute to resolve through more process. *See Wozniak v. Conry*, 236 F.3d 888, 890 (7th Cir. 2001); *Towers v. City of Chicago*, 173 F.3d 619, 629 (7th Cir. 1999). And Terry does not contest the legitimacy of the prison's rationale for his initial transfer. So even if his initial review should have occurred sooner, Terry's due-process claim fails.

We thus AFFIRM the district court's judgment dismissing Terry's suit.