NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 30, 2017[*]
Decided September 1, 2017

*Before*

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

No. 16-4259

| | |
|---|---|
| EDDIE JAMES, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Central District of Illinois. |
| | |
| *v.* | No. 16-4237 |
| | |
| RANDY PFISTER, et al., | Harold A. Baker, |
| *Defendants-Appellees.* | *Judge.* |

## O R D E R

Eddie James, an Illinois prisoner serving a lengthy sentence for first-degree murder, claims in this suit under 42 U.S.C. § 1983 that he was punished for alleged misconduct without due process and in a manner that violated the Eighth Amendment.

---

[*] The appellees were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that the case is appropriate for summary disposition. *See* FED. R. APP. P. 34(a)(2)(C).

The district court dismissed James's complaint at screening, *see* 28 U.S.C. § 1915A, and he appeals. We vacate the dismissal and remand for the suit to proceed.

Because the lawsuit was dismissed at screening, we accept James's factual allegations as true for purposes of this appeal. *See Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). James, who is designated as "seriously mentally ill," was accused in late 2015 of engaging in gang activity at Hill Correctional Center. He was given written notice of this charge just ten minutes before his disciplinary hearing commenced. The charge rested solely on information garnered from informants, who said that a gang leader nicknamed "Homicide" had ordered a "hit" on another inmate. James pleaded not guilty and questioned the reliability of the informants and the absence of any explanation for thinking he is "Homicide." James wasn't told by the members of the disciplinary committee that another inmate had confessed to ordering the hit. The committee members (two guards and a mental-health professional, all of them defendants) found James guilty and recommended that he be housed in segregation for a year without yard or gym privileges and also that he forfeit six months of "GCC or SGT." The warden, another defendant, approved that punishment. James was immediately transferred to Stateville Correctional Center, a maximum security prison, where he was housed with another inmate in a 9' by 12' cell—too little space for James, who is 6'-2" and weighs 260 pounds, to exercise.

James's physical and mental health worsened during his extended isolation in the cramped cell. After the first three months he began experiencing extreme pain in his back and left leg. He saw a physician's assistant who recommended regular exercise because his back and leg muscles were atrophying, causing the pain. Upon learning that James was barred from recreation, the physician's assistant prescribed physical therapy, but the wait list exceeded seven months. Over the next several months James's pain increased. He eventually saw a doctor, who agreed with the physician's assistant that James needed exercise. The doctor ordered an MRI and moved James higher on the wait list for physical therapy. James eventually started physical therapy, but after a few weeks the therapist declared the treatment ineffective and discontinued it. Meanwhile, James had started having anxiety attacks and was given antipsychotic medications. Before his release from segregation he attempted suicide multiple times.

James filed multiple grievances regarding the lack of recreation, some at the behest of a lieutenant who told James he had never seen an inmate get an entire year of recreation restriction. Many of these grievances went missing or unanswered. James also discussed the recreation restriction directly with Stateville's warden and one of her

assistants, both named as defendants. About ten months into his punishment, he suffered a severe anxiety attack, prompting a guard knowledgeable about his condition to arrange for his exercise privileges to be restored.

In his § 1983 complaint James claims that the defendants violated the Eighth Amendment by deliberately denying him yard privileges knowing he wouldn't be able to exercise and likely would suffer adverse effects on his mental and physical health. James also claims that the defendants violated his right to procedural due process under the Fourteenth Amendment by not ensuring the reliability of the prison informants and withholding exculpatory evidence at his disciplinary hearing, as well as by disregarding promises in *Rasho v. Walker*, No. 1:07-CV-1298-MMM-JEH (C.D. Ill. filed Jan. 7, 2007), an ongoing class action, that the Department of Corrections would institute procedural safeguards for seriously mentally ill inmates charged with disciplinary infractions. In dismissing the suit, the district court reasoned that James mostly complains about violations of DOC regulations and policies, not the Constitution. The court also reasoned that James's suit seeks to undermine the disciplinary committee's finding of guilt. Yet James "lost good time credit," the court asserted, and thus *Heck v. Humphrey*, 512 U.S. 477 (1994), would bar "a claim based upon the adjustment committee finding him guilty." *See Edwards v. Balisok*, 520 U.S. 641 (1997) (applying *Heck* to prison disciplinary hearings).

On appeal James argues that his complaint states tenable claims under the Eighth and Fourteenth Amendments. His claims are not barred by *Heck*, James reasons, because in Illinois an inmate convicted of first-degree murder does not *earn*, and thus cannot lose, good time. *See* 730 ILCS 5/3-6-3(a)(2)(i), (a)(3) (providing that inmates convicted of first-degree murder after June 1998 cannot earn Statutory Good Time ("SGT") or discretionary Good Conduct Credit ("GCC")); *Peretz v. Sims*, 662 F.3d 478, 479 (7th Cir. 2011). For that reason, James explains, the forfeiture of good time ordered by the disciplinary committee and approved by the warden at Hill is illusory. Moreover, James insists, the success of his claims does not depend on invalidating the outcome of his disciplinary hearing.

We agree with James that the district court erred in relying on *Heck* as a reason to dismiss his lawsuit. *Heck* and *Edwards* do not bar review of prison disciplinary proceedings under § 1983 unless that review could imply the invalidity of the plaintiff's continued custody. *See Muhammad v. Close*, 540 U.S. 749, 754–55 (2004); *Simpson v. Nickel*, 450 F.3d 303, 306–07 (7th Cir. 2006). As we explained in *Simpson*, 450 F.3d at 303, *Heck* and *Edwards* are "beside the point" for inmates whose infractions are punished by

disciplinary segregation or restrictions on recreation, since neither penalty "is a form of 'custody' under federal law." In contrast, *Heck* and *Edwards* will be an obstacle for an inmate who tries using § 1983 to regain good time that was revoked after a disciplinary hearing, since he remains in "custody." But James did not lose good time, a fact confirmed by an attachment to his appellate brief. If Illinois changes its sentencing law, perhaps the revocation of good time intended by the disciplinary committee could have real consequences, but that possibility is speculative. And whether it matters at all is not a question to be resolved at screening; *Heck* and *Edwards* define an affirmative defense, *Polzin v. Gage*, 636 F.3d 834, 837–38 (7th Cir. 2011); *Okoro v. Bohman*, 164 F.3d 1059, 1061 (7th Cir. 1999), and only when the application of an affirmative defense is apparent from the complaint should a district court invoke it at screening under § 1915A, *see Walker v. Thompson*, 288 F.3d 1005, 1010 (7th Cir. 2002).

On the merits we also agree with James that he states claims under both the Eighth and Fourteenth Amendments. Our decisions are clear that preventing inmates from exercising for prolonged periods may violate the Eighth Amendment. *See, e.g., Turley*, 729 F.3d at 652 (explaining that persistent lockdowns resulting in inability to exercise may violate Eighth Amendment if imposed without proportional justification); *Delaney v. DeTella,* 256 F.3d 679, 683–85 (7th Cir. 2001) (concluding that Stateville officials accused of denying plaintiff all out-of-cell exercise for six months could not rely on defense of qualified immunity); *Pearson v. Ramos*, 237 F.3d 881, 884 (7th Cir. 2001) (recognizing that denying out-of-cell exercise for extended periods may constitute cruel and unusual punishment); *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) (vacating dismissal of claim asserting constitutional violation arising from complete denial of exercise for seven consecutive weeks).

Opinions from the Supreme Court and this court also spell out that inmates must be afforded some degree of process before they are subjected to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005); *Westefer v. Neal*, 682 F.3d 679, 683–84 (7th Cir. 2012). A transfer to disciplinary segregation for an extended period under particularly harsh conditions may constitute a deprivation of liberty sufficient to require constitutionally minimal process, *see Kervin v. Barnes*, 787 F.3d 833, 835–37 (7th Cir. 2015); *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). That process, though informal, would include enough notice to prepare a defense to the charge, *Westefer*, 682 F.3d at 684, and James's allegation that he got only ten minutes is enough to state a claim for a violation of due process.

Because we are remanding this case, we add two observations concerning James's claim that he was denied due process at his disciplinary hearing. First, as the district court observed, James cannot use § 1983 to enforce Department of Corrections regulations and policies. *See Guajardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010). Neither can he assert a liberty interest arising from the procedures adopted by the parties in *Rasho* or from the Illinois statute and administrative directive which, James says, resulted from that case. *See* 730 ILCS 5/3-2-2; Ill. Dep't of Corr., Admin. Directive No. 5.12.2013. Even if we these sources might have created liberty interests for inmates suffering from serious mental illness, those state-created interests would not necessarily be protected by the Due Process Clause of the Fourteenth Amendment. *See Olim v. Wakinekona*, 461 U.S. 238, 249–51 (1983). Mentally ill inmates are not constitutionally guaranteed heightened procedural protections, so any state-created liberty interest for mentally ill inmates is subject to the Due Process Clause only if it passes the test in *Sandin*. James does not argue that the extra safeguards provided for mentally ill inmates are meant to protect them from atypical or significant hardships as compared to normal prison life. Rather, he argues essentially that § 5/3-2-2 and Directive 05.12.2013 constitute promises by the state to treat mentally ill inmates differently. But there is no constitutional dimension to these promises. *See United States v. Caceres*, 440 U.S. 741, 749, 752–53 (1979). Furthermore, although the parties in *Rasho* have reached agreement on many issues, the case is ongoing. Any concerns James has regarding decisions in *Rasho* should be directed to class counsel in that case.

Second, we note that much of James's due process claim focuses on the allegation that he wasn't told about another inmate's confession to the conduct he allegedly committed. For disciplinary hearings resulting in lost good time, we have held that *Brady v. Maryland*, 373 U.S. 83 (1963), applies and, with some exceptions, requires that exculpatory evidence be disclosed to the inmate. *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Whether *Brady* also would apply as part of the informal procedures sometimes required before subjecting an inmate to harsh segregation without also subjecting the inmate to a loss of good time is a question that, as far as we can tell, no court has considered. This question, if pursued by James on remand, can be addressed by the parties and the district court in the first instance.

The judgment dismissing James's lawsuit is VACATED, and the case is REMANDED for further proceedings. Given this outcome, James did not incur a strike for filing this suit. *See* 28 U.S.C. § 1915(g).